Good morning. May it please the court, I'm Daniel Kaplan. I will be presenting argument for both Mr. Begay and Mr. Walshman this morning. And I'm going to watch the clock and try to reserve three minutes of my time for rebuttal. This case involves the interpretation of the Sex Offender Registration and Notification Act, or SORNA, specifically the provision of SORNA which articulates the registration obligation on covered persons. 42 U.S.C., section 16913, the key language being that the covered person must register in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. Now, we interpret that language, specifically the phrase each jurisdiction, to refer to each of the three that are enumerated, works, lives, goes to school. The district court, however, took a different interpretation. The district court interpreted each jurisdiction in the case of Indian country, where there is overlapping jurisdiction of the tribe and a state, to refer to each of those two as well. That interpretation is incorrect and should be rejected for three reasons. The first reason is that it runs directly into conflict with another key provision of SORNA, the non-duplication provision, which is specifically directed toward Indian country. Counsel, under your reading of the statute, what does the word each do? It specifies that a person who is covered by the Act and has a registration obligation, if he lives in one SORNA jurisdiction, works in another SORNA jurisdiction, and goes to school in a third SORNA jurisdiction, must register in each, not just one. That's our interpretation. And the district court didn't have any occasion to decide whether that was or was not the case, because both of these defendants lived in the Navajo jurisdiction in the state of Arizona and didn't work or go to school. So your reading is that if he works in a jurisdiction different from where he lives, then he must register in both of those jurisdictions. Correct. If he's a student and he had a third jurisdiction, he must register in that jurisdiction. Correct. But if he lives in a dual sovereignty jurisdiction, that is on a Navajo reservation within the state of Arizona, he has the option of registering in one, but not necessarily both. Is that right? If he lives in a – well, we don't believe that he would have the option. We believe that the statute makes clear that in the case when a jurisdiction like Navajo country becomes a SORNA jurisdiction, which they have done by saying, we intend to implement SORNA. In that case, then he must register in the Navajo jurisdiction. Exactly. And he has no obligation to register in Arizona. Exactly. Even if the Navajos don't have a registration system in place and Arizona does. Which is the reason this issue arose. And the problem with the district court's interpretation is the district court construes each jurisdiction as saying, if you live in the Navajo, which is part of Navajo, which is within Arizona, you have to register with each of those two. Now, if you read the statute that way, the non-duplication provision, it's 42 U.S.C. 16927B1. It says a tribe subject to this subtitle is not required to duplicate functions. Under this subtitle, which are fully carried out by another jurisdiction or jurisdictions within which the territory of the tribe is located. If the district court's interpretation of each jurisdiction is correct, that provision will be flouted permanently. Under the statute, anyone living in Navajo in Arizona would have to register with each. My understanding was that the statute anticipated that there would be information sharing going on between two jurisdictions. And so there's no reason to register with both because you would, registration with one will provide constructive notice to the other. Well, there is, I think there are provisions for information sharing. If you're saying that in light of that, if you go to school in one jurisdiction and work in another, you don't have to register with both. I would say that the language of the statute says you do because it uses this phrase, each jurisdiction. There may be some question of whether that's necessary, but that's how the statute reads in its plain language. Is it possible for somebody to reside in more than one state, more than one jurisdiction? No. It's not possible? To reside in more than one, well. I'm not asking about citizenship, so I'm not asking about citizenship for purposes of diversity. I'm asking about residence. Okay. The definition of resides under the statute, 42 U.S.C. section 1691113, says resides means with respect to an individual, the location of the individual's home or other place where the individual habitually lives. I suppose an issue could arise if somebody divides their time between two homes, whether that means you have to pick one. And under your reading of the statute, would they have an obligation then to register in both of those jurisdictions? So let's suppose that somebody worked two weeks on, two weeks off, and had a second job and was flipping back across the border between Arizona and New Mexico. If that is, again, not the situation here. If that issue were to arise, there would be a question of whether each jurisdiction where the offender lives, for example, or works, for example, if two of them can coexist at the same time, then perhaps a person would have that obligation. Let's suppose that he was working in some kind of a mining camp in New Mexico but maintained a residence on the Navajo reservation in Arizona. Would he have an obligation to notify New Mexico that he was in their jurisdiction two weeks out of every month? I'm sorry. Did you say he's working in? Working in New Mexico, living on the reservation in Arizona. Yes. Then under the statute, the phrase each jurisdiction means he has to comply, register where he works and where he lives. Because he's an employee there. Because he's an employee there, exactly. Okay. All right. Let me just change it. The Four Corners area provides just ample stuff for former law professors to speculate here. Yes. So if he lives in Arizona and works across the Four Corners in Colorado but doesn't – I'm sorry. Let's suppose that he maintains two residences. But he's got places that he's got – he's got a trailer in Colorado and a home on the reservation in Arizona and works in New Mexico. Do you have to register in all three jurisdictions? He definitely has to register in New Mexico where he works. He's an employee. And then as far as Colorado and Arizona, that would raise the issue of can there be more than one residences for purposes of SORNA. I'm not aware of that issue having been raised or decided anywhere. And it's not presented here. What does the word habitually mean? I'm not aware of that issue having been raised or decided. But this is a different case. We're talking about jurisdiction within another jurisdiction, correct? Yes. That's the issue here. And both of these people were living in one place on the Navajo in Arizona. So the first problem with the district court's interpretation is it runs directly into the non-duplication provision and would indefinitely violate that provision by requiring permanent duplication. The second problem with the district court's interpretation is what we put under the general heading of tribal sovereignty. And what I mean by tribal sovereignty is canons of construction that come into play when a federal statute relates to the issue of causing the states to potentially extend their regulatory jurisdiction into Indian country. These canons of construction were applied, for example, in the Bryan versus Itasca County case that we cited and the Dion case that we cited. And basically, Bryan is an example of a case that applied the canon of construction that says that a federal statute should not normally be interpreted to authorize states to extend their regulatory jurisdiction into Indian country. The Dion case is an example of a statute of a case that applied the principle that a federal statute is not normally construed to abrogate treaty rights that are held by Indians. And we're not really, Arizona's not really making an incursion into Navajo sovereignty. This is a federal statute that has to do with imposing requirements on the tribe, so the U.S. is abrogating the Navajo's sovereignty to that respect, and offering the tribes the option of either having the state handle the registration for them or handling it themselves. Well, what you've described is an exception in which the Navajos can declare their intention to conduct a registry, fail to do so, thereby allowing anybody on the Navajo reservation to escape registration. That's a huge gap in what Congress looked like a comprehensive statute. I want to say first, I disagree with the first part of your statement. I think this is a serious incursion into tribal sovereignty because although it's a federal statute, the effect of the district court's interpretation is to authorize the State of Arizona to regulate Navajos living on the Navajo reservation. And that is seen under cases like Bryan and Dion and Williams that we all – that we cited as a severe incursion. The ability to regulate Navajos living in the Navajo Nation belongs to the Navajo Nation and is not to be incurred upon under the treaty between the United States and the Navajo and under the principles of interpretation. But what you've got now is the Navajos creating an opt-out, an opt-out for their own people. So anybody living on the Navajo reservation, which I think includes non-Navajos, can simply run to the Navajo reservation and because the Navajos don't have a registration requirement, they are free from SORNA jurisdiction. That is absolutely wrong, Your Honor. And the reason is, first of all, there is no application of this so-called gap to non-Navajos. The State's authority to regulate and apply sex offender registration provisions to non-Indians on the reservation is not impaired by the tribal sovereignty of the Navajo Nation to regulate Navajos on the Navajo reservation. It doesn't even apply, this so-called gap doesn't even apply to non-Navajos on the Navajo reservation because the State's authority to regulate non-member Indians within a particular reservation, that is, Indians who are on a reservation but are not enrolled members of that nation, is not impaired. So your reading of the statute is that if you're a non-Navajo living on the Navajo reservation, you still have an obligation to register in Arizona. Exactly right. Not a reading of the statute, but that's the principles that govern Indian country. That's the legal principles that have been developed. Is there anything in SORNA that would lead us to that interpretation? This is just general Indian country principles. It's not based in SORNA. It's based on Indian law. Well, I understand that, but now I'm a little confused because I thought that the SORNA had a provision in it that permitted the Indian tribes to maintain their own registries and that, in fact, the Navajos, Navajo Nation had opted in to that. Yes. But they didn't have an established registry. Right. So I don't see how this has anything to do much with the sovereignty. I don't see if they don't have why these general principles of Indian sovereignty have anything to do with it because we have this rather specific problem here of a jurisdiction that hasn't yet complied with what is supposed to do under the statute. And then the question becomes what is the obligation of the individual to register? Right. And your position seems to be, well, to update, and your position seems to be he has no obligation. He doesn't have to do it with the State. There's just no obligation at all as long as he's on the reservation and the reservation hasn't complied. And I find it very difficult to think that that's what Congress intended. Congress put a fix, a way of addressing this very problem into the statute. If you look at the part of the SORNA that relates to Indian tribes, 42 U.S.C. 16927 B2C, it says basically if the Attorney General finds that an Indian tribe that's elected to become a SORNA jurisdiction hasn't implemented SORNA within a reasonable time or doesn't appear able to implement SORNA within a reasonable time, the Attorney General can take the jurisdiction away from the tribe and give it to the State. The fix is in the statute. But I understand that is a fix if the – for dealing with the problem of the tribe that doesn't comply. But that could take a very long time for the government to do that. I'm not sure what the effect of that is on the individual's responsibility to update and register. It seems to be a – you know, it seems to me the argument can be made it's a different subject. The individual Navajo living on the Navajo Nation only has an obligation to register with the State if the plain language of SORNA requires him or her to do that. And the interpretation, the proper interpretation of SORNA does not require him or her to do that. I'd like to reserve the balance of my time. Okay. Thank you. Good morning. Joan Rufinacchia Perri on behalf of the United States District of Arizona. Congress's stated purpose in enacting the registration requirements of SORNA was to have a comprehensive national registry for sex offenders and offenders against children. The defendant's interpretation of SORNA flies in the face of that overall goal because, as the Court has noted, it essentially creates a safe haven on the reservation for federal offenders who are tribal members who live on a reservation that hasn't yet enacted or may never enact SORNA. On the other hand, the District Court's interpretation carries out the goals that Congress has set forth because it provides a mechanism whereby a federal sex offender who is a tribal member can register with the State and update his registration with the State unless and until the Navajo Nation implements SORNA. Once the Navajos implement SORNA, would Mr. Magee and Mr. Watchman have to register with Arizona as well? No. And what tells us that they only have to register with one jurisdiction? Because under the law, let me get the... Is that the duplication provision? Well, it's the government's position that the non-duplication provision supports the tribes are allowed to opt-in or not opt-in. If they elect to opt-in under the non-duplication, they don't have to elect to do anything that's already being done by the States. On the other hand, if they decide to fully opt-in, then they become an independently operating jurisdiction. Okay. So once they opt-in, then Mr. Magee only has to register with the tribe and does not have to register with the State? Once they opt-in and fully implement, yes. Okay. And he's subject to criminal penalties because he either can't figure out whether the Navajos have done this. I mean, I'm a little puzzled by how Mr. Magee is supposed to know when he's supposed to register with the Navajos as opposed to the State. And that's because you're missing a piece of the puzzle, which I'd like to provide to you, which is that there's an in-person requirement, depending on the tier of offender that you are, whether you're a tier 1, 2, or 3, there's an in-person requirement that you show up personally in a district or in a jurisdiction to register. Didn't he show up in Arizona? He did show up personally. He did show up in Arizona. Or both of them did. Yes. And in fact, the first registration that was done by each of the defendants listed a location on the reservation as their address. It was in the subsequent updates that they were in the halfway house in Tucson. But the in-person requirement for both of these defendants as tier 2 offenders is to appear in a jurisdiction every six months so that they can be photographed and any updated information obtained. So it's the government's position that when and if, because the Navajo tribe has opted in, and they have indicated their express intent to become SORNA compliant. They have not yet done so, and they may not do so for another year or so, because as the Court's probably aware, they have until July of this year to request an additional one-year extension until July of 2011. Well, I'm not understanding what the ñ can you complete your answer to that? Yes. And so by having to appear in person in a jurisdiction every six months at that point. To appear means appear where? Appear in person to a sheriff's office in the county where you reside, when talking about the state of Arizona. When they appear in person in the county where they reside, they then would be advised that the Navajo Nation has now become an independent jurisdiction where they can then register the next six months with the Navajo Nation. Because this ongoing every six-month in-person appearance goes on for 25 years for these individuals. And so if at some time in the future these defendants or the Navajo Nation opts in and in fact implements a SORNA compliant registry system, they would be advised that they can go there instead of having to come to the county. So if they went to the ñ if Mr. Begay had gone to the sheriff's office on the Navajo reservation and said, I'm here to update my registration, what would have happened? I'm not sure that ñ because the county wouldn't necessarily ñ I'm trying to think. Well, if he shows up at the Navajo sheriff, what does the sheriff tell him? I don't have a registration program in place. You've got to go register with the state. Well, he's ñ The county sheriff or the ñ No, the tribal sheriff. The tribal police authority. This is a Navajo county. Okay. I'm sorry. All right. If they showed up at the tribal police department, the ñ I don't know. It would be speculation to say what they would say. Because each of these defendants, when they initially registered and when they updated their registration, were given the form that exists in Arizona under the Arizona Weatherly Act. And so that act tells them that they have to go to the county sheriff's office of the county in which they're living and register. And they have to update that registration if they move within the three days or if they don't move and they just stay within the reservation, they have to go every six months. Is there any question that if they've gone to the county sheriff's office to register, living on the reservation, that the county sheriff would have accepted their registration? There's no reason why they wouldn't because that's, in fact, what they've been doing. That's what they did when they initially registered right after their convictions. But they weren't living on the Navajo reservation. Well, on the initial registration, that's what they listed their address as. And then they filed it because you're also required upon ñ these defendants had their sex offense convictions prior to SORNA's enactment, but they were released from imprisonment after SORNA was in effect. So SORNA was in effect and they were registered. And when they registered, they listed their address as the Navajo reservation, but they filed it with, I believe, in Maricopa County within Arizona because they were required to register in the district of conviction. How do you address the disparate treatment that they're getting in this case? I mean, individuals that are registered in the Navajo Nation and who are living on the Navajo reservation are treated differently if they have to register with the state of Arizona. You don't have to do that if you reside in any other state. Do you register in two jurisdictions? I believe that that confuses the different requirements that are here. You have the jurisdiction's requirements to establish a registry and you have the individual's obligation to register. In fact, Native Americans are given additional places where they can register because under the government's and the district court's interpretation of the statute, since they have an independent obligation to register as of July 27, 2006, they can go to the county where they live and register with the sheriff or if the tribe that they are a member of has in fact enacted a SORNA-compliant registry, they can register there. So it's not treating them differently. If it's in fact treating them differently, it's giving them more as opposed to taking something away from them. It gives them an additional place. As the district court said, all this is is a mechanism by which they can comply with their individual obligation. This court found in George a defendant has an individual obligation to register and update their registration. And since these defendants initially registered, listing their locations on the reservation on their initial application, and then they updated their registration listing the halfway house, they were under an obligation to continue to update their registrations if they moved or left the location where they were living. They in fact did that. They absconded to the Navajo reservation. And under the defendant's interpretation of that, they've got a safe haven. They're free from registration because that's where they went. The district court's interpretation saying each jurisdiction where you reside would include in cases where there is a reservation issue, gives them two places where they could register unless and until. Now, the district court is broadly reading the definition of jurisdiction, wasn't it? It was broadly reading the interpretation of each. Because jurisdiction is a jurisdiction. And the Navajo Nation has declared that they intend to become a jurisdiction. What about the car case? Are you familiar with the car case? Yes. It was recently decided. Doesn't that undermine your argument with regard to each jurisdiction? Not at all. And the reason that I say that is because the car case was interpreting just Section 18 U.S.C. 2250. It wasn't interpreting SORNA broadly. And I think they say that in the ‑‑ I think it's footnote two. And so because they're looking only at interstate travel, which is not an element of the offense in this case, and they're looking specifically at the criminal statute as opposed to SORNA overall and its registration requirements, I don't think it controls this case at all. But didn't the court ‑‑ wasn't the court concerned with the broad definition of jurisdiction that the lower courts gave to it? Yes. But, again, within the constraints of 2250, because they said we can't read 2250, the criminal portion of this statute, and give it the broad reading that the government wants us to give it. In this case, we're not looking just at 2250. In fact, what we're looking at is SORNA overall. And SORNA's overall purpose, the court in Carr recognized, that it is to protect the public from sex offenders and offenders against children, and that it does that by having a comprehensive registry that tries to keep people from falling through the cracks. But didn't the Supreme Court say that knowing that Congress aimed to reduce the number of noncompliant sex offenders tells us little about the specific policy choice Congress made in that particular statute? Doesn't that language apply here? I don't think it does, again, because you're talking about the interstate travel and whether or not it could occur before SORNA was enacted. And they found that, no, it has to be afterwards, and the interpretation looking at 2250 has to be narrower than looking at SORNA in general. Now, can I ask a question? This is a – this comes up on a motion to dismiss the indictment. Correct. Is that correct? And the indictment alleges that there has to be a knowing violation. Correct. And the issue as raised in the motion to dismiss was the legal question of whether or not he had any – whether there could be any violation, whether he had any obligation to register. So the effect in the district court interpreted the statute and the intent to be that if it hasn't been implemented yet on the reservation, he registers with the State of Arizona. Now, am I correct that that simply means that the case proceeds and there's still a burden on the government to prove that there was a knowing violation, that he knew that he had an obligation to register with the State? I'm trying to get at this problem that also, you know, is a little troublesome as to how this all works. And I'm not – I think I understand your question, but I'm not sure if I do. So he – What does knowing violation mean? Knowing violation in the case of a 2250 prosecution. In this case. In this case. He has to know that he was under an obligation to register. Yeah. Okay. And the government established in the plea agreement that he knew he had an obligation to register because he had actually registered. Right. I just – I'm trying to understand how the statute works so that I understand the effect of what we would be holding. And in this case and in other cases that have talked about knowing registration, the courts have looked to see what information the individual defendants had in addition to what they'd actually done, their conduct. And in this case, we had the signed and initialed registration information where they initially updated and then they – I'm sorry. When they initially registered and then they updated their registration. And so from that, you can infer that the defendants knew they had an obligation to register and to continue to register because at that time they're told, as a Tier 2 offender, you have to, you know, appear in person every six months and you have to do this for 25 years. So it wasn't something that was going to end anytime soon. And I see my time is almost up, if the Court has. Is there any further questions? Thank you. I have more hypotheticals for former law professors. Let's say you live in Blandings, Utah, on a reservation. You work in Shiprock, New Mexico, and you go to school at the Navajo Community College in Saley, Arizona. She referred to the in-person registration requirement. Under this interpretation, talking about disparate treatment here and absurd interpretations and absurd results, you would have to travel thousands, thousands of miles as a Tier 2 offender twice a year, as a Tier 3 offender every three months, to do this dual duplicated registration that the district court reads into the statute. Because you'd have to register on the Navajo reservation, which if that ended the story would be all you had to do. But under the district court's interpretation, you also have to register New Mexico every three months, Arizona every three months, and Colorado every three months. Now, people on reservations, I'm sure you are all aware, tend to not have a lot of resources to travel thousands of miles every year. There is no indication in the statute that Congress intended to put such ungodly burdens on people living on reservations. But you suggested that you would have to register in three different jurisdictions if that was where you resided, where you worked, and where you went to school. No. No? If you, because they're all on the Navajo reservation. So as a sworn in jurisdiction, under our interpretation, you reside in the Navajo, you work in the Navajo, you go to school in the Navajo. You go to the Navajo registration, you're... Well, that's different, but that's not your hypothetical. Your hypothetical was you started in Blanding, Utah, and worked in Shiprock, New Mexico, and went to school in Arizona. And I think they're all in the Navajo, right? The theory was that they're all part of the Navajo country. I see. Yes. So under our interpretation, you go to your Navajo, you do your Navajo registration, all of your data is put into the one national database. Anybody who wants to search for sex offenders in the geographic location where you work, the geographic location where you go to school, and the geographic location where you live can do that because your data is there via the Navajo. It doesn't have to be reentered by you traveling thousands of miles a year to do it a second time. It makes no sense. Now, I didn't understand the government to say that once the Navajo registration system is up that you would still have an obligation to register both with Arizona and the Navajos. And that's a key point because they're suggesting there's some kind of a sunset provision in the statute that says, well, you know, if and when Navajo has theirs up and running, then the state obligation goes away. Well, that would be one way to write the statute. Congress didn't do it that way, and the court can't do it for them. That's what Carr says. You can't rewrite the statute in view of your vague notions of the basic purpose of the statute. Okay. If there are no more questions. No, don't appear to be any. Thank you. The Court appreciates the arguments presented in the case. Just argued the case is submitted for decision.
judges: Gonzalez, Schroeder, Bybee